Jose ARCE CRESPO,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 86–1527.

United States Court of Appeals,
First Circuit.

Submitted Jan. 9, 1987.

Decided July 7, 1987.

Aurelio Saliva Mattei, Ponce, P.R., on brief, for plaintiff, appellant.

Wendy J. Miller, Office of the Gen. Counsel, Social Security Div., Dept. of Health and Human Services, Baltimore, Md., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief, for defendant, appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

Claimant Jose Arce Crespo filed an application on April 30, 1980 for Social Security disability benefits, alleging a kidney condition, high blood pressure, chest, back and leg pain, a skin condition, headaches, and nerves, with an onset date of December 1, 1977. On September 15, 1978 and February 2, 1979, claimant had been denied benefits for some of the same conditions on two prior applications which had both alleged the same December 1, 1977 onset date. The Administrative Law Judge (ALJ) considered the new application for benefits *de novo* and, in a May 19, 1981 decision, found claimant not disabled under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Appendix 2, Subpart P, Rules 202.10 and 202.-11 ("the grid"), on the ground that claimant retained the residual functional capacity to perform light work. Claimant sought re-

view in the district court, which remanded to the Secretary. The court held, *inter alia,* that in view of claimant's nonexertional impairments, there was a lack of substantial evidence to support the ALJ's finding that claimant could perform the full range of light work. The court suggested the taking of additional evidence, such as the testimony of a vocational expert.

On remand, three additional hearings were held, at which the testimony of a vocational expert was received. The ALJ declined to reopen the denial of benefits on claimant's two prior applications, but considered all the medical evidence from December 1, 1977, the onset date alleged in all three applications. In essence, therefore, the ALJ considered claimant's application *de novo* as to the entire claimed period of disability. The ALJ found that claimant suffers from lumbosacral strain, status post right nephrectomy, hypertension, and onychia with paronychia (a skin condition). The ALJ concluded that claimant could perform only a limited range of light work because of his nonexertional impairments, i.e., his inability to be in contact with skin irritants or work with moving machinery or near unprotected heights. Relying on the testimony of the vocational expert, the ALJ found that claimant's past work included skilled work as a cook. Claimant was found to have transferable skills from that past work such as elementary arithmetic skills, adjustment of controls and processes, supervising and coordinating work activities, and the ability to evaluate whether work was done correctly. Again relying on the vocational expert's testimony, the ALJ found that these transferable skills would allow claimant to perform several jobs in the local economy such as checker one, final examiner, hand coil taper, and calibrator, all of which are light semi-skilled jobs which would permit claimant to alternate positions. The ALJ also used Rule 202.12 of the grid, which would direct a finding of "not disabled," as a framework for decision. Accordingly, the ALJ found claimant not disabled. After the Appeals Council denied claimant's request for review of the ALJ's decision, claimant appealed to the district court, which affirmed the Secretary. Claimant appealed. We affirm.

Claimant first attacks the Secretary's failure to find significant impairments of hypertensive cardiovascular disease, angina, and osteoarthritis. However, although the ALJ did find that claimant suffered from hypertension, medical reports indicated no damage to claimant's heart. For example, Dr. Acevedo, a consulting cardiologist, found "no evidence of cardiac or hypertensive pathology." There was no medical evidence diagnosing osteoarthritis. The ALJ was fully justified in discounting claimant's allegations of hypertensive cardiovascular disease, angina, and osteoarthritis.

Claimant next challenges the ALJ's finding that claimant retains the residual functional capacity to perform a limited range of light work. Claimant argues that he should not have been found capable of performing more than sedentary work. The social security regulations define light work as follows:

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

20 C.F.R. § 404.1567(b). Under Social Security Ruling 83–10, West's Social Security Reporting Service, *Rulings,* at 51 (1986 supp.),

"[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday. Sitting may occur intermittently during the remaining time."

Sedentary work by contrast, is defined as follows:

> "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. § 404.1567(a). The record contains several residual functional capacity assessments prepared by physicians that support the ALJ's finding. Dr. Cases, a consulting neurologist, found that claimant could sit four hours, stand four hours, and walk four hours during an eight-hour workday, lift or carry ten pounds frequently and twenty pounds occasionally, operate arm controls, and bend occasionally. Dr. Acevedo found that claimant could sit and stand or walk eight hours, lift fifty pounds and twenty-five pounds frequently, use his hands to push and pull, operate foot controls, and bend frequently. Dr. Rodriguez, a consulting urologist, found that claimant could sit six hours, stand six hours, and walk six hours during an eight-hour workday, lift or carry ten pounds frequently and twenty pounds occasionally, operate arm and leg controls, and bend occasionally. These assessments unquestionably constitute substantial evidence of record to support the ALJ's finding that claimant's exertional impairments permit him to perform light work.

■ We also find substantial evidence to support the Secretary's finding that claimant had skills in his former work as a cook which were transferable to several light, semi-skilled jobs. Claimant testified at a February 17, 1981 hearing that in his work as a cook he "cooked rice, beans, I prepared the beefsteaks, I would clean and prepare the fish, and pick out the scales, I would prepare lobsters, I opened them and put them in the machine to clean them ... I'd take out the guts, clean them out ... and then when somebody wanted a grilled lobster, I'd put it in the grill...." Claim-ant described his cook work in a vocational report as follows: "Had to cook at a restaurant. Usually had to prepare food for not less than 60 persons a day. Besides the daily menus I also had to prepare special orders. Had to do the dishes too." Although claimant subsequently testified in a May 16, 1983 hearing that he worked not as a cook, but merely as a kitchen helper, the ALJ was permitted to credit claimant's earlier assertions that he had worked as a cook. This is especially so in view of the candid assertions by claimant and claimant's counsel in that same hearing that claimant suffered from a gradually failing memory.

■ Furthermore, the ALJ was justified in concluding that claimant's cook job was skilled, or at least semi-skilled, work. The ALJ credited the vocational expert's testimony that the cook job involved the following skills: the use of elementary arithmetic skills to figure the quantity of material needed and the dimensions to be followed; the ability to adjust controls, regulate processes, and work with precise measurements; the ability to supervise and coordinate working activities; and the ability to detect or examine the work to determine if it was done correctly. Claimant argues that nothing in his own description of his former work warranted this finding. It is true that, as claimant contends, the vocational expert's description of the skills involved in the job of cook relied to some extent on the description of that work in the Dictionary of Occupational Titles, § 313.361–014. The vocational expert testified that according to that description the job of cook would qualify as "skilled" work. However, the vocational expert's assessment of claimant's work as a cook also relied on claimant's own description of that work, as quoted above, and is wholly consistent with that description. We cannot quarrel with the ALJ's conclusion that the cooking duties as described by claimant would necessarily require the skills enumerated by the vocational expert. The ALJ, again, was permitted to discount claimant's subsequent, inconsistent testimony that he only worked as a mere kitch-

en helper and did not acquire any of these skills. Moreover, the ALJ "may rely on general job categories in the *Supplement to the Dictionary of Occupational Titles* as presumptively applicable to a claimant's prior work ... [T]he claimant could overcome the presumption that the Secretary's generalization applies by demonstrating that her duties were not those envisioned by the framers of the categories listed in the publication." *Gray v. Heckler,* 760 F.2d 369, 372 (1st Cir.1985); *DeLoatche v. Heckler,* 715 F.2d 148, 151 (4th Cir.1983). In the instant case, that portion of claimant's testimony which was permissibly credited by the ALJ did not cast any doubt upon the applicability to claimant's former cook job of the general description contained in the Dictionary of Occupational Titles.

■ The next step in the ALJ's analysis was the finding—again in reliance on the testimony of the vocational expert—that claimant's skills from his former work as a cook were transferable to any of several light, semi-skilled jobs available in the economy: checker one, final examiner, hand coil taper, and calibrator. The social security regulations deal with the issue of transferability of skills as follows:

"(d) *Skills that can be used in other work (transferability)—(1) What we mean by transferable skills.* We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

(2) *How we determine skills that can be transferred to other jobs.* Transferability is most probable and meaningful among jobs in which—

(i) The same or a lesser degree of skill is required;

(ii) The same or similar tools and machines are used; and

(iii) The same or similar raw materials, products, processes, or services are involved.

(3) *Degrees of transferability.* There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability. However when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable."

20 C.F.R. § 404.1568(d) (emphasis in original).

In the instant case, the jobs claimant was found capable of performing clearly meet the first factor of § 404.1568(d)(2), i.e., they require the same or a lesser degree of skill as claimant's former work as a cook. These jobs all were described by the vocational expert as semi-skilled, whereas he described the job of cook as skilled. For the reasons stated above we have concluded that substantial evidence supported a finding that it was at least semi-skilled, if not skilled, and such a finding is sufficient to meet the first factor of § 404.1568(d)(2).

As to the remaining two factors of § 404.1568(d)(2), it does not seem that the same or closely similar tools, machines, raw materials, products, processes, or services are involved in claimant's former cook job and in the jobs the Secretary found claimant could perform. The similarities between these work settings are relatively remote. However, the regulation makes clear that "[a] complete similarity of all three factors is not necessary for transferability." 20 C.F.R. § 404.1568(d)(3). Furthermore, the vocational expert's testimony pointed to ways in which particular skills learned as a cook could be transferred to these other jobs. For example, the vocational·expert testified that a job as a merchandise checker would involve checking quantity, quality, and other specific details of merchandise received at an establishment. Such a job, accordingly, would make

use of claimant's skills for elementary arithmetic and for examining work to see if it was done correctly. Similarly, a job as a final examiner would involve examining a finished instrument or appliance to observe a possible labor or materials defect. A job as a calibrator would involve aligning or balancing at zero the needles on meters or electrical counters in order to calibrate the device, making use of claimant's skills for adjusting controls, regulating processes, and working with precise measurements. Claimant's skills acquired as a cook are not so specialized or job-specific as to render them non-transferable—like skills acquired in isolated vocational settings like mining, agriculture, or fishing—under 20 C.F.R. § 404.1568(d)(3). Rather, claimant's skills are of wider potential applicability.

■ Contrary to claimant's argument, claimant's age does not seriously limit the transferability of claimant's skills. Claimant was 54 on December 31, 1981, when claimant last enjoyed insured status under the Act. The regulations, on the other hand, provide that "advanced age (*55 or over*) is the point where age significantly affects a person's ability to do substantial gainful activity." 20 C.F.R. § 404.1563(d) (emphasis added). Under all the circumstances, therefore, and recognizing that this is a close issue, we think the Secretary could properly conclude that the general work processes utilized in the checker one, final examiner, hand coil taper, and calibrator jobs are not so significantly different from those involved in claimant's former cook job as to preclude a finding that claimant's skills would be transferable with only minor vocational adjustment. There was adequate justification for the ALJ's reliance on the vocational expert's testimony.

We find no error in the ALJ's application of Rule 202.12 of the grid as a "framework for decisionmaking" within which he evaluated the vocational testimony. While the Secretary certainly could not apply the grid as dispositive in a case like this where claimant has demonstrated that he has significant nonexertional impairments, *Burgos Lopez v. Secretary of Health and Human Services*, 747 F.2d 37 (1st Cir.1984), section

200.00(e)(2) of 20 C.F.R., Part 404, Subpart P, Appendix 2 expressly allows some limited reference to the grid for guidance in such a case. It states,

> (2) However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone, and if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a *framework for consideration* of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

(emphasis added).

■ Nor did the ALJ err in making reference to Rule 202.12. That rule provides for a finding of not disabled where a claimant is closely approaching advanced age, is at least literate and able to communicate in English, and has transferable skills from previous skilled or semi-skilled work experience. We have already stated our view that there is substantial evidence in the record for the ALJ's finding that claimant had transferable skills. Claimant also asserts that since he is unable to communicate in English, Rule 202.12 was inapplicable. However, claimant is a resident of Puerto Rico. We take judicial notice that for the most part it is the ability to communicate in Spanish, not in English, that is vocationally important in Puerto Rico. The vocational expert in this case testified to the existence of jobs in the Puerto Rican economy that claimant could perform. In using the grid as a framework for consideration of the vocational testimony, therefore, the ALJ was justified in treating claimant's fluency in Spanish as tantamount to fluency in English. *See* 20 C.F.R. § 404.1564(b)(5) (inability to communicate in English is a vocational consideration "[b]ecause English is the dominant language of the country"). In so holding, we do not suggest that the Secretary, in relying on the grid for a dispositive finding on

disability in appropriate cases where no significant nonexertional impairments are present, is free to substitute Spanish for English in the requirements of the grid whenever a claimant resides in Puerto Rico. We need not, and do not, reach that issue.

■ Finally, claimant objects to the ALJ's finding that "[n]o physical, mental or intellectual limitations were observed during the oral hearing which could add credibility to claimant's subjective complaints." Claimant asserts that at the hearings he appeared sick and in pain, and showed an inability to understand and answer many questions that made it clear that he was illiterate for all practical purposes. On the basis of the bare record we cannot readily evaluate the ALJ's firsthand observation of claimant's apparent physical limitations and pain. We have no basis on which to question the ALJ's conclusion. *See Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 130 (1st Cir.1981) ("questions of demeanor ... are correctly left for the Secretary"). As for claimant's alleged inability to understand and answer questions, the transcripts of the hearings do not suggest any such inability. Although claimant and claimant's counsel did assert at the May 16, 1983 hearing that claimant suffered from a gradually failing memory, claimant did not claim a memory problem as an impairment. In any event, there was no medical evidence to suggest that claimant's memory was significantly impaired, or that a memory problem would have significantly restricted the transferability of claimant's skills, as of December 31, 1981, when claimant was last insured under the Act.

The judgment of the district court is affirmed.