972 F.2d 337
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Lydia E. MALDONADO, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 91-2300.
 United States Court of Appeals,
First Circuit.
 August 18, 1992
 
 Appeal from the United States District Court for the District of Puerto Rico
 Nestor Juan Rodriguez on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Robert M. Peckrill, Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee.
 D. Puerto Rico
 VACATED AND REMANDED.
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Lydia Maldonado (claimant) appeals from a district court judgment affirming the decision of the Secretary of Health and Human Services denying her application for disability benefits. For the reasons discussed below, we vacate the judgment of the district court and remand with instructions to enter an order remanding this case to the Secretary for further proceedings consistent with this opinion.
 
 I.
 
 2
 Claimant applied for benefits on July 13, 1987, when she was 48 years old. She had been employed for thirty years as a sewing machine operator for the Maidenform company. (Tr. 109). She has a sixth grade education and cannot communicate in English. Claimant's initial application alleged that she was disabled by circulatory problems in both legs and rheumatoid arthritis. She stopped working on October 31, 1986, the alleged date of onset of her disability.[1] Claimant's insured status expired on December 31, 1991.
 
 
 3
 Between October 1986 and December 1987, claimant was treated as an outpatient for numerous complaints, including peripherovascular insufficiency, gout, arthritis, and herpes zoster. She also underwent minor surgery for the removal of sebaceous cysts on her eyelids. Claimant complained of general bone pain and pain in both legs throughout this period. Occasional references to pain in her right foot are also noted. (Tr. 15961, 197). She was treated with numerous medications including Naprosyn (for gout), Vasodilan and Persantine (for circulation). She applied for disability benefits on July 13, 1987. At that time, the Social Security Administration's (SSA) interviewer observed no limitations of movement, swelling or deformities. (Tr. 112).
 
 
 4
 Dr. Roberto Jimenez, a vascular surgeon, evaluated claimant for the SSA on August 10, 1987. Claimant related a history of cramps, numbness and occasional uncontrollable drooling. He observed fullness in her lower legs without pitting pretibial edema. Her skin was normal. Dr. Jimenez found bilateral varicose veins which were worse in claimant's right leg. He did not assess how this condition might affect claimant's functional capacity to work.
 
 
 5
 Claimant was treated for gout and right foot pain again in September 1987.[2] Her initial application was denied on September 15, 1987. (Tr. 89-90). Claimant filed a request for reconsideration and secured treatment from Dr. Alberto Abreu Rivera, a neurosurgeon, between September and November 1987.[3] She complained of leg cramps and polyarthralgias (simultaneous inflammation of several joints). Dr. Abreu found mild swelling in claimant's left knee, unquantified loss of motion in claimant's lower back, and straight leg raising limited to 45 degrees bilaterally. He diagnosed osteoarthritis, chronic back pain and anxiety-depressive syndrome and prescribed more medications. Dr. Abreu specifically noted that claimant did not need any assistive devices. (Tr. 185). Claimant appeared improved in October 1987, but less than a month later, Dr. Abreu concluded that her final prognosis was poor.
 
 
 6
 In December 1987 claimant underwent a venogram of her right leg which revealed patency of her deep venous system. Although no obstructions were noted, a medical consultant recommended that claimant not remain standing for long periods. (Tr. 193, 200, 204). Claimant was seen at the Ponce District Hospital in early 1988. Edema of her right leg was noted. (Tr. 192). She continued to be treated with medications including Motrin (for inflammation) and Persantine.
 
 
 7
 On April 12, 1988, a hearing was held before an administrative law judge (ALJ), who observed ample swelling in claimant's right leg and left ankle and that claimant could not press her index finger to the table. (Tr. 43, 48-49). Claimant used a cane because she had fallen upon occasion, although none had been prescribed. The ALJ found that claimant was not disabled at step five of the sequential evaluation process. See Goodermote v. Secretary of Health and Human Services, 690 F. 2d 5, 6-7 (1st Cir. 1982). The Appeals Council vacated this decision on the grounds, inter alia, that the ALJ failed to evaluate properly the claimant's allegations of disabling pain, and erred in applying the Grid to reach a finding of not disabled when the record indicated that the claimant was not capable of performing the full range of light or sedentary work. (Tr. 216). The Appeals Council remanded for the taking of additional evidence, including vocational expert testimony.
 
 
 8
 On remand, the Secretary convened two additional hearings before a different ALJ and secured two medical residual functional capacity assessments. Claimant and a vocational expert testified at the hearings. Dr. Robert Leon Perez, an internal medicine and rheumatology specialist, examined claimant on or about February 15, 1989. Her chief complaints at that time were varicose veins and arthritis. Claimant exhibited a full range of motion in her neck and spine and no gait abnormalities. All joints were cool; there was no effusion, redness or loss of motion noted in the upper or lower extremities. Edema was present at the ankles. Skin hyperpigmentation was found at the right ankle. A February 15, 1989 x-ray disclosed a plantar spur on the right ankle. Claimant's sedimentation rate (an indicator of swelling) was normal. Antinuclear antibody testing for systemic disease (e.g. lupus) was also negative. (Tr. 223-26).
 
 
 9
 Dr. Leon found that claimant's impairments affected her ability to lift and carry, but he did not state claimant's limitations in numbers of pounds. Dr. Leon indicated claimant's varicose veins limited her ability to stand, walk and sit without interruption to a total of 3-4 hours at one time and a total of 6-7 hours over an 8 hour day. (Tr. 227-29).
 
 
 10
 Dr. Juan Diaz Troche, a vascular surgeon, completed claimant's second RFC assessment after examining her on February 16, 1989. He found right hand weakness without evidence of muscular atrophy. Tinel's sign was negative for nerve root irritation in the right wrist. Stasis dermatitis was present on the right ankle. Dr. Diaz indicated that claimant's right hand weakness affected her ability to lift or carry but he too did not indicate how many pounds claimant was limited to. Claimant is right handed. (Tr. 60). Dr. Diaz found that claimant's abilities to reach, handle, push and pull were all impaired, and that she could occasionally climb, but never balance, stoop, crouch, kneel or crawl. In assessing whether claimant was subject to any environmental restrictions, Dr. Diaz recommended that claimant avoid moving machinery. (Tr. 232-34).
 
 
 11
 On remand, the ALJ questioned vocational expert (VE) Miguel Pellicier about claimant's ability to work. After concluding that claimant could not do her past work as a sewing machine operator if she needed to change positions, this expert went on to identify three other jobs that claimant could perform which enabled her to alternate positions. The ALJ found that claimant suffered from a severe peripherovascular condition, right leg (mild) varicose veins, rheumatoid arthritis, right hand weakness and occasional gout that precluded her from returning to her past work. Based on the assessments of Dr. Diaz and Dr. Leon, the ALJ concluded that claimant retained the residual functional capacity to stand, walk, or sit up to 3-4 hours at a time, with the ability to perform these activities a total of 6-7 hours in an eight hour day, that claimant was unable to lift or carry more than 10 pounds frequently and twenty pounds occasionally, and that she was unable to grasp, reach, push pull or handle with her right hand.[4] The ALJ concluded that claimant was not disabled at step five because she could perform the jobs identified by the vocational expert. The district court affirmed this finding. This appeal followed.
 
 II.
 
 12
 On appeal, claimant argues that the ALJ erred in using Grid Rule 202.11 as a framework because this rule assumes that claimant can communicate in English. Claimant says that she should be considered unskilled since she has no transferable skills and that the ALJ should have found her disabled under Rule 202.09. This rule directs a finding of "disabled" for an unskilled claimant, who is approaching advanced age with an RFC for light work, but who cannot communicate in English.[5]
 
 
 13
 Claimant's argument overlooks the fact that hers is not a case which calls for a straightforward application of the Grid. The presence of significant nonexertional limitations will preclude the Secretary from exclusively relying on the Grid to resolve the issue of disability. See, e.g., DaRosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Burgos Lopez v. Secretary of Health and Human Services, 747 F.2d 37, 39 (1st Cir. 1984). The ALJ found that claimant had several nonexertional limitations, including an inability to sit or stand more than 3-4 hours at a time, an inability to reach, grasp, push or pull with her right hand, and an environmental restriction against working around moving machinery. These limitations rendered the Grid useful only as a framework of reference. DaRosa, 803 F.2d at 26. The ALJ thus did not err by failing to rely on either Rule 202.09 or Rule 201.09 to find claimant disabled. Claimant's inability to communicate in English does not call for the application of Rule 202.09, for "it is the ability to communicate in Spanish, not in English, that is vocationally relevant in Puerto Rico." Arce Crespo v. Secretary of Health and Human Services, 831 F.2d 1, 6 (1st Cir. 1986).
 
 
 14
 Claimant further argues that the vocational expert's testimony does not provide substantial evidence supporting the ALJ's conclusion that claimant retained the capacity to perform other work because the ALJ posited claimant's age as 49 in his hypothetical (which qualifies as a "younger" person" under 20 C.F.R. § 404.1563(b)), while claimant was 50 at the time of the second hearing and adjudication.[6] This does not render the vocational expert's testimony unreliable. To be sure, the claimant's age may be a dispositive factor when a case may be resolved under the Grid alone. But we have previously noted that this is not such a case. The difference between age 49 and 50 is not so great as to preclude the ALJ from relying on the expert's testimony.
 
 
 15
 Nevertheless, the appellant cites numerous cases which do highlight a serious defect in the hypothetical. After eliciting the vocational expert's opinion that claimant could not do her past work as a sewing machine operator if she needed to change positions, the ALJ asked:
 
 
 16
 Q. If she had any difficulty or limitation, or otherwise, if she did not have difficulty to lift up to 20 pounds, or difficulty when standing or sitting, or if she could not balance, crouch or kneel down, touch the floor or the ground, or reaching, handling, pushing or pulling or moving machinery or trying to move machinery, would she have difficulty doing her former job? (emphasis supplied).
 
 
 17
 A. That is, if she didn't have difficulty to--
 
 
 18
 Q. If she had difficulty in these areas.
 
 
 19
 A. She would have to deal with moving machinery.
 
 
 20
 Q. What can she do under this premise?
 
 
 21
 A. Under that premise she could mainly perform jobs of a classification or revision within that kind of manufacture, for example, ... she could perform the task as "Garment Sorter" ... [which the VE went on to describe as light, unskilled, and which allowed claimant to alternate positions] ... Also, she may perform the task as "Finished Garment Inspector" ... [and] "Hand Sorter" [which were also light, unskilled, and which allowed one to alternate positions].
 
 
 22
 While the ALJ's hypothetical posited that claimant had difficulty "reaching, handling, pushing or pulling or moving machinery or trying to move machinery," the ALJ subsequently found that claimant was not able to reach, grasp, handle, push or pull with her right hand. (Tr. 19). But an inability to move machinery, or "to deal with moving machinery," (as the vocational expert testified) is not the same as an inability to "reach, grasp, handle, push or pull" with the claimant's dominant hand. The latter sounds like a far more serious limitation. The ALJ credited the medical evidence which showed that claimant suffered from right hand weakness, evidence that appears corroborated by the first ALJ (who observed that claimant could not press her index finger to the table) and by the claims interviewer who observed that claimant had difficulty grasping a pen when she applied for reconsideration. That being so, the ALJ should have asked the vocational expert:
 
 
 23
 Q. Assuming the aforementioned limitations, can the claimant still be expected to perform these jobs if she is not able to reach, grasp, handle, push or pull with her major right hand?[7]
 
 
 24
 The ALJ's hypotheticals to a vocational expert should convey the claimant's limitations precisely in order to yield relevant responses. See Arocho v. Secretary of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982). "A vocational expert's testimony can not constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all the claimant's limitations...." Cooper v. Bowen, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989); Whitman v. Bowen, 785 F.2d 262, 263-64 (8th Cir. 1986). Because the ALJ failed to include the claimant's right hand impairment in posing his hypothetical, we cannot say the vocational expert's testimony constitutes substantial evidence that the claimant is able to perform the three jobs he identified, particularly where each of these jobs appears to require significant hand movements.[8] On remand, then, the Secretary must determine whether a substantial number of jobs remain available to claimant in light of all her impairments, including her right hand limitations.
 
 
 25
 Accordingly, the judgment of the district court is vacated and the case is remanded to the district court with instructions to enter an order remanding the case to the Secretary for further proceedings consistent with this opinion.
 
 
 
 [1]
 In explaining how her condition kept her from working, claimant stated, "[t]he place I worked was close[d]. I can't find a job since I can't be standing or walking due to swollen (sic) and pain in both legs. I have pain in all my joints." (Tr. 105)
 
 
 [2]
 An October 1987 x-ray of claimant's right foot disclosed no abnormalities
 
 
 [3]
 Claimant's reconsideration disability report alleged high cholesterol and gout as additional limiting impairments. (Tr. 113). The SSA interviewer observed swelling in claimant's face, arms and hands, and that she exhibited difficulty grasping a pen and moving about. (Tr. 117-18). In contrast to her initial application disability report (which described claimant as "of normal weight" (Tr. 112)), claimant's reconsideration disability report described claimant as "relatively obese." (Tr. 117)
 
 
 [4]
 The ALJ also found that claimant could balance, stoop, kneel, crouch or crawl only occasionally. (Tr. 19)
 
 
 [5]
 Claimant further contends that her exertional RFC is closer to sedentary than light work and that a "disabled" finding is also required by the grid rule that applies to sedentary work. (Grid Rule 201.09)
 
 
 [6]
 Under 20 C.F.R. § 404.1563(c), someone between 50-54 is "closely approaching advanced age," and entitled to have the Secretary consider that his/her age, "severe impairment and limited work experience, may seriously affect your ability to adjust to a significant number of jobs in the national economy."
 
 
 [7]
 And, if the ALJ determined that claimant's right hand limitations were partial, not total, (which is not clear on this record), he should have asked the expert whether claimant could perform these jobs (or any others) assuming a partial disability in her right hand
 
 
 [8]
 In this regard, the "Hand Sorter" position required an ability to classify and tie clothes (presumably in bundles), while the "Finished Garment Inspector" position required an ability to spread, mark and measure garments, and an ability to use scissors to trim excess threads. See Dictionary of Occupational Titles (1991), p. 838. The "Garment Sorter" position required claimant to organize finished garments, possibly ironing, folding, and packaging same. Id., p. 204