**Linda DIVIRGILIO, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**Civil Action No. 97–30137–MAP.**

United States District Court,
D. Massachusetts.

Sept. 24, 1998.

Cynthia A. Spinola, Kenneth P. Ferris, Hashim & Spinola, Pittsfield, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

## ORDER

PONSOR, District Judge.

Upon *de novo* review, and in view of the absence of any objection, this Report and Recommendation is hereby adopted. The motion to reverse (Dkt. No. 5) is DENIED, and the Motion to Affirm is ALLOWED (Dkt. No. 7). So ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (Docket No. 05) and DEFENDANT'S MOTION TO AFFIRM (Docket No. 07)*

NEIMAN, United States Magistrate Judge.

Upon de novo review, and in view of the absence of any objection, this Report and Recommendation is hereby adopted. The motion to reverse (Dkt. No. 5) is DENIED, and motion to Affirm is ALLOWED (Dkt. No. 7). So ordered.

This matter is before the court pursuant to 42 U.S.C. §§ 405 and 1383(c)(3) of the Social Security Act which provide for judicial review of a final decision by the Commissioner of Social Security ("Commissioner") regarding an individual's entitlement to Social Security disability benefits ("SSDI"). Linda DiVirgilio ("Plaintiff") contends that the Commissioner's decision was not supported by substantial evidence and must be reversed. She argues that, in determining her residual functional capacity, the Administrative Law Judge ("ALJ") gave greater weight to the advisory opinion of a non-examining doctor in concluding that Plaintiff had the capacity for "light work," rather than the treating physician's conclusion that Plaintiff could do only "sedentary work." In response, the Commissioner argues that the ALJ's decision was supported by substantial evidence. The Commissioner claims that the ALJ considered the treating physician's opinions but properly determined that they were not supported by objective medical evidence.

The parties' motions were referred to the court for a report and recommendation pursuant to Rule 3 of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the court recommends that the Commissioner's motion be allowed and that Plaintiff's motion be denied.

## I. *STANDARD OF REVIEW*

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, even if the record could support multiple conclusions, a court must uphold the Commissioner "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Irlanda Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez*, 647 F.2d at 222). Accordingly, a court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the record could arguably justify a different result. *See Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987). The resolution of conflicts in evidence of disability are for the Commissioner, not for the doctors. *See Rodriguez*, 647 F.2d at 222; *Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir.1987). Similarly, questions of witness credibility and demeanor are resolved by the Commissioner, not the court upon its review. *See Crespo v. Secretary of Health & Human Servs.*, 831 F.2d 1, 7 (1st Cir.1987); *Lizotte v. Secretary of Health & Human Servs.*, 654 F.2d 127, 130 (1st Cir.1981).

## II.  *DISABILITY STANDARD*

An individual will qualify for SSDI benefits if she can demonstrate that her disability existed prior to the expiration of her insured status.  *See* 42 U.S.C. § 423(a)(1)(A) and (d).  *See also Torres v. Secretary of Health & Human Servs.,* 845 F.2d 1136, 1137–38 (1st Cir.1988); *Cruz Rivera v. Secretary of Health & Human Servs.,* 818 F.2d 96, 97 (1st Cir.1986).  The Social Security Act defines disability, in applicable part, as the "inability to engage in any substantial gainful activity by reason of any determinable physical ... impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).  In addition, an individual is considered disabled only if she has "a physical ... impairment [that is] of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  *See generally Bowen v. Yuckert,* 482 U.S. 137, 146–48, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Guided by the regulations for determining whether a claimant is disabled, the Commissioner uses a sequential five-step analysis which considers:

> First, is the claimant currently employed?  If [s]he is, the claimant is not disabled.

> Second, does the claimant have a severe impairment?  A "severe impairment" means an impairment "which significantly limits [her] physical or mental capacity to perform basic work-related functions."  If the claimant does not have an impairment of at least this degree of severity, [s]he is automatically considered not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

> \*     \*     \*     \*     \*     \*

> Fourth, does the claimant's impairment prevent [her] from performing work of the sort [s]he has done in the past?  If not, [s]he is not disabled.  If so, the agency asks the fifth question.

> Fifth, does the claimant's impairment prevent [her] from performing other work of the sort found in the economy?  If so, [s]he is disabled; if not, [s]he is not disabled.

*Goodermote v. Secretary of Health & Human Servs.,* 690 F.2d 5, 6–7 (1st Cir.1982) (citing 20 C.F.R. § 404.1520).

## III.  *FACTUAL BACKGROUND*

Plaintiff was born on February 16, 1944, and was fifty-two years of age at the time the ALJ issued her decision.  (Administrative Record ("A.R.") 33, 72.)  Plaintiff has a high school education, (A.R.34), is married and has two adult children.  (A.R.33.)  She was employed by General Electric ("GE") from March 17, 1980, until August 11, 1993.  (A.R.34–35.)  Her various positions included keypunch operator, clerk/typist and production control clerk.  (Id.) The production control clerk position involved frequent lifting of up to fifty pounds, overhead reaching, repetitive use of her hands to unwrap and move modules, and standing and sitting in various positions.  (A.R.35–39.)

On March 5, 1992, Dr. Paul M. Haidak diagnosed Plaintiff as having a ganglion cyst, which was subsequently removed on March 19, 1992.  (A.R.249–50.)  After a four-week leave, she returned to GE as a production control clerk in April, 1992.  (A.R.41.)  Upon her return, Dr. Anne E. Frodey, a doctor for GE, placed a twenty pound restriction on Plaintiff's activities, although she continued to lift boxes that weighed more than her restriction.  (A.R.41.)  Thereafter, more physical problems became manifest.  Starting in April, 1992, Plaintiff experienced pain and numbness in her hand, elbow and shoulder.  (A.R.42.)  In July, she was diagnosed with carpal tunnel syndrome and tendinitis.  (A.R.42–43.)

Plaintiff was laid off pursuant to a corporate downsizing at GE, but returned to work in November 1992.  Her new position involved typing and computer inputting and

lasted for two months. (A.R.44.) Plaintiff reported an increase in pain. (Id.)

Plaintiff was then placed in the printing and binding department, but was not physically able to manage the position. (Id.) Dr. Frodey told Plaintiff "there was nothing [that she] could do there [at GE]." (A.R.45, 56.) In particular, the climate controlled environment caused pain in her shoulder, arm and hand, and created difficulty in both sitting and standing positions. (A.R.45–46.) The shoulder pain began to radiate into the middle of Plaintiff's back in August of 1993. (A.R.46.)

As early as August 3, 1992, orthopedic surgeon Dr. John C. Bouillon examined Plaintiff. Over the course of treatment, Plaintiff was diagnosed with mild carpal tunnel syndrome, was prescribed medications, therapies and braces, and advised to do light work with limitations. (A.R.136.) In his notes of September 1, 1992, Dr. Bouillon indicated that Plaintiff should only perform light duty activities with particular limitations on repetitive work and lifting, pushing and pulling objects. (A.R.135, 137–39.) On April 29, 1993, Dr. Bouillon reported some improvement in Plaintiff's physical condition. (A.R.139.)

Plaintiff testified that Dr. Bouillion recommended "that's enough, you're out of there. So he took me out." (A.R.46.) Plaintiff represents that she accepted this recommendation and stopped working in August of 1993.(Id.) On August 30, 1993, Dr. Bouillon noted that Plaintiff's condition had worsened and that she had left her employment as of August 11, 1993. It is not clear from Dr. Bouillon's notes that it was he who recommended in advance that she stop working. His notes only indicate that her work environment had a negative impact on her physical condition and state "[n]o work until further notice." (A.R.139.)

Over the remaining course of her treatment with him, Dr. Bouillon continued to recommend "light duty" activities with limitations. On November 16, 1993, he noted that Plaintiff's physical condition had worsened and that she was totally disabled for purposes of employment. (A.R.140.) On February 11, 1994, Dr. Bouillon reported that he observed physical improvement in Plaintiff's condition. However, he did not want Plaintiff to push or lift objects that weighed more than five to ten pounds. He also suggested that she "retrain for a lighter duty occupation." (A.R.141.) Between March 18, 1994, and May 27, 1994, Dr. Bouillon observed "no change" in Plaintiff's condition. (A.R.142.) His notes from July 29 through December 20, 1994, indicate that Plaintiff was "Totally unfit for regular employment." (A.R.143.) On February 9, 1995, Dr. Bouillon noted that Plaintiff's physical condition remained unchanged. (A.R.144.)

On April 11, 1995, Dr. Bouillon noted that Plaintiff still had pain and spasms, but that she had a "full range of motion" and "strength in all of her major muscles in the upper extremities." (A.R.260.) No atrophy or weakness was detected and a bone scan was negative. (Id.) After an examination on May 30, 1995, Dr. Bouillon noted "[i]mproved mobility of the cervical spine with good grasp biceps triceps and deltoids." (Id.) Once again, no atrophy or weakness was detected and sensation was normal. Nevertheless, Dr. Bouillon found Plaintiff "[u]nfit for any strenuous lifting, pushing or pulling." (Id.) Dr. Bouillon's notes for September 5, 1995, November 28, 1995, February 6, 1996, and June 4, 1996, reflect similar findings and prognoses. (A.R.261–62.)

Plaintiff was examined and diagnosed by doctors other than Dr. Bouillon. From February 1992 through August 1993, Plaintiff was seen by doctors affiliated with GE. (A.R. 225–43.) As indicated in a February 24, 1993 letter from Dr. Frodey, Plaintiff was provided "very light duty" work at GE, as well as daily physical therapy, as a result of her complaints of pain in her hand, arm and shoulder. (A.R.199.) In August of 1992, Plaintiff was also referred by Dr. Bouillon to Dr. Robert Van Uiter. Dr. Van Uiter noted Plaintiff's pain and diagnosed her with mild carpal tunnel syndrome or alternatively, tendinitis with mild carpal tunnel syndrome. He prescribed medication and braces. (A.R. 131–32.) Plaintiff also received physical therapy with Western Massachusetts Physical Therapy. From February 1993 through June 29, 1995, Plaintiff completed forty three

physical therapy sessions that resulted in improvement of her physical condition. (A.R.147–72). Plaintiff had "grossly good" strength throughout her upper quadrant and normal mobility in the cervical spine. Although she continued to have pain, her physical therapist concluded that she was able to perform normal activities.

Finally, in March of 1995, an orthopedic surgeon, Dr. Steven Silver, examined Plaintiff. Noting her history of pain and physical problems, he diagnosed chronic subacromial bursitis with rotator cuff tendinitis. (A.R. 173–74.) In 1996, Plaintiff submitted to a magnetic resonance imaging (MRI) which indicated degenerative disc disease with mild narrowing of the LI–2 interspace. (A.R.7.)

## IV. *PROCEDURAL HISTORY*

Plaintiff applied for SSDI benefits on or about January 12, 1995, alleging that she became disabled on August 11, 1993, as a result of myofascial syndrome, a rotator cuff tear and tendinitis (A.R.107.) Plaintiff's initial application and her request for reconsideration were both denied. (A.R.76, 87, 90, 92, 102.) After a July 12, 1996 administrative hearing, the ALJ determined that Plaintiff was not disabled. Specifically, the ALJ determined that, while Plaintiff could not return to her past work, she was capable of performing light work with some non-exertional limitations. (A.R.18–19.) On April 25, 1997, the Appeals Council denied Plaintiff's request for review. Subsequently, the Appeals Council received additional medical evidence submitted by Plaintiff, but again denied review. (A .R. 3.) Plaintiff then filed the instant complaint.

## V. *DISCUSSION*

The Commissioner maintains that the ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence and should be affirmed. In moving to reverse the decision of the Commissioner, Plaintiff argues the contrary. In particular, Plaintiff takes issue with the ALJ's determination of her residual functional capacity at the fourth step of the sequential analysis, at which time the ALJ gave greater weight to the opinion of a non-examining doctor than

that of her treating physician. More specifically, Plaintiff claims, the ALJ gave greater weight to the opinion of Dr. Michael Derechin who, without having examined Plaintiff, opined that she was capable of doing light work. In contrast, Plaintiff's treating physician, Dr. Bouillon, reported Plaintiff's capacity for sedentary work only.

██ With certain limitations, an administrative law judge's determination of a claimant's ineligibility for benefits may be deemed to be grounded in substantial evidence even when that determination significantly relies upon a non-examining physician's opinion. As far back as 1971, the Supreme Court held that written medical reports of advisory doctors were not only admissible but could constitute substantial evidence. *Perales,* 402 U.S. at 402, 91 S.Ct. 1420. The advisory opinion in *Perales,* however, was coupled with an examination of the claimant, a scenario somewhat different than the instant matter.

Subsequent to *Perales,* the First Circuit held that the advisory opinion of a non-testifying, non-examining doctor could not be the sole basis of an administrative law judge's decision. *Browne v. Richardson,* 468 F.2d 1003 (1st Cir.1972). The court was concerned that such reports:

lack the assurance of reliability that comes on the one hand from first-hand observation and professional examination or, on the other, from first-hand testimony subject to claimant's cross-examination. It is hearsay based on hearsay. Thus, although the report may be admissible in light of *Perales,* it cannot be the substantial evidence needed to support a finding.

*Id.* at 1006. More recently, however, the First Circuit clarified that "the principle enunciated in *Browne* is by no means an absolute rule." *Berrios Lopez v. Secretary of Health & Human Servs.,* 951 F.2d 427, 431 (1st Cir.1991). *See also Tremblay v. Secretary of Health & Human Servs.,* 676 F.2d 11, 13 (1st Cir.1982). "To the contrary," the First Circuit explained, an advisory report of a non-examining, non-testifying physician "is entitled to evidentiary weight, which 'will vary with the circumstances, including the

nature of the illness and the information provided the expert.'" *Berrios Lopez,* 951 F.2d at 431 (quoting *Rodriguez,* 647 F.2d at 223). Among the factors which enabled the First Circuit in *Berrios Lopez* to affirm the administrative law judge's reliance on the non-examining physicians' reports were the reports' substantial subsidiary medical findings, the availability of most of the medical evidence to the non-examining physicians, the care with which the medical files were reviewed and the broad agreement reflected in the advisory opinions.

In the case at bar, the ALJ similarly relied upon the report of a non-examining physician who had most, if not all, the medical evidence available for review. (A.R.91–99.) Dr. Derechin's report of August 8, 1995 was completed after Dr. Bouillon's final consultation of February 9, 1995. Again, Dr. Bouillon was Plaintiff's treating physician. Dr. Derechin reviewed Dr. Bouillon's reports, (A.R.135–46), as well as records of Western Massachusetts Physical Therapy. (A.R.147–72.) Based on that evidence, Dr. Derechin concluded that Plaintiff could occasionally lift or carry up to twenty pounds, could frequently life up to ten pounds, could stand or walk about six hours in an eight hour day, could sit for a total of about six hours in an eight hour work day and had the unlimited ability to push and pull. (A.R.95.) These limitations were the same as those reached by Dr. Larry N. Meade, another non-examining physician. (A.R.80.) The specific facts upon which Dr. Meade, and in turn, Dr. Derechin relied, included the physical limitations of Plaintiff's cevrical and shoulder rotations, the rotator cuff injury, the absence of pain in her neck and shoulders, the lack of weakness in her shoulders, elbows, forearms, wrists and fingers, and the absence of sensory deficits. (A.R.80–81, 95–96.)

■ Both Dr. Meade's and Dr. Derechin's advisory opinions differed from that of Dr. Bouillon, who at various time had placed a somewhat lower five pound limitation on Plaintiff. (See A.R. 142–44, 256.) While Drs. Meade and Derechin disagreed about Plaintiff's manipulative limitations, (A.R.82, 97), there was certainly "broad agreement" between them, a level of agreement sufficient for their advisory opinions to be considered substantial evidence. *See Berrios–Lopez,* 951 F.2d at 431.

■ The weight given to advisory opinions also turns on whether the determination of residual functional capacity is supported by objective medical findings. *Id.* While the ALJ acknowledged Dr. Bouillon's conclusion that Plaintiff was disabled, she did not find this conclusion supported by objective evidence. The court agrees.

Granted, Dr. Bouillon's · medical records, specifically what appears to be ongoing worker's compensation reports to GE, reflect his conclusion that Plaintiff had a "total disability." (A.R.256–63.) However, as described, Dr. Bouillon indicated that Plaintiff had good strength in her upper extremities and lower back, normal sensation, a full range of motions, and suffered no atrophy or weakness. (See A.R. 260–63.) In addition, bone scans were negative. (Id.) As a result, the ALJ found "a lack of support in the record to warrant the extremely low weight limit imposed by Dr. Bouillon." (A.R.18.) Moreover, the ALJ noted, Plaintiff "only takes Advil on a regular basis for her pain syndrome and she testified she is able to do light household chores." Accordingly, the ALJ found that Dr. Bouillon's conclusions about exertional limitations were internally inconsistent with his other medical conclusions. (Id.) The court believes this finding to be based on substantial evidence.

The court has also considered the ALJ's evaluation of Plaintiff's pain. In accord with 20 C.F.R. § 404.1529, the ALJ had to consider (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors, for example, movement, activity and environmental conditions; (3) the type, dosage, effectiveness and adverse side-effects of any pain medication; (4) any treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the Plaintiff's daily activities.

The ALJ's review was thorough and will not be repeated here. (See A.R. 15–17.) Suffice it to say, the ALJ found that Plaintiff's only medication was "two tablets of

Advil in the morning and two tablets at night," that her self-described pain was "a four on a scale of one to ten," and that "[d]espite testifying she could only sit for a half hour, the claimant appeared to sit comfortably through the hearing which lasted roughly 50 minutes." (A.R.16.) Moreover, after undergoing physical therapy, Plaintiff was discharged in June of 1995 "with 'grossly good' strength throughout the upper quadrant and normal mobility in the cervical spine area." (A.R. 16 (quoting A.R. 160).) The ALJ continued, "[a]lthough the claimant's pain levels were noted to vary from 3 to 5 on a pain scale of 1 to 10, her [physical] therapist stated she was able to participate in normal activites." (A.R. 17 (citing A.R. 160).) After analyzing Plaintiff's pain and its impact on her residual functional capacity, the ALJ concluded that her complaints of pain were "not entirely credible in light of the clinical findings." (A.R.16.) Such credibility determinations are for the administrative law judge, not the court. *Crespo*, 831 F.2d at 7. The ALJ's doubt about the intensity of Plaintiff's pain also made it reasonable for her to give more weight to the advisory opinions than that of the treating physician. *See Berrios–Lopez*, 951 F.2d at 432.

In sum, the ALJ did not consider the non-examining doctor's advisory opinions alone but in the context of other evidence, including the treating doctor's reports, a consultative examination, the physical therapy reports and her credibility assessment of

Plaintiff's pain. Taken together, this evidence is substantial.[1]

## VI. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiff's motion to reverse be DENIED and that the Commissioner's motion to affirm be ALLOWED.[2]

August 21, 1998.

1. Plaintiff also argues that certain regulations apply to disability determinations for a claimant who is approaching advanced age, (fifty-five and older), with a certain level of skill and education. *See* 20 C.F.R. § 404, Subpt. P, App. 1. These regulations apply to claimants who have the capacity to do only sedentary work. In making her disability determination, however, the ALJ concluded that Plaintiff had a residual functional capacity for light work and correctly applied 20 C.F.R. §§ 202.13, 202.14 and 202.15. As a result, the ALJ determined that, regardless of whether Plaintiff's semi-skilled work experience was or was not transferable, there was no disability. (A.R.18–19.)

2. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of

this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.