### Ismael ROSARIO, Plaintiff,

v.

### Kenneth S. APFEL Commissioner of the Social Security Administration, Defendant.

### No. Civ.A. 99–30077–MAP.

United States District Court,
D. Massachusetts.

March 1, 2000.

David Engle, Northampton, MA, for Ismael Rosario, plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Kenneth S. Apfel, Commissioner of the Social Security Administration, defendant.

*MEMORANDUM REGARDING PLAINTIFF'S MOTION TO REVERSE OR REMAND THE DECISION OF THE COMMISSIONER AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER* (Docket Nos. 7 & 11)

PONSOR, District Judge.

## I. *INTRODUCTION*

Pursuant to 42 U.S.C. § 405(g), Ismael Rosario seeks review of a final decision by the Commissioner denying him Social Security Insurance ("SSI") benefits. Contending that the decision is not supported by substantial evidence, he has moved for a reversal or remand of the Commissioner's decision. The defendant moves to affirm the decision of the Commissioner, arguing that the decision is supported by substantial evidence.

Since the Commissioner's decision that plaintiff's residual functional capacity renders him capable of work is not supported by substantial evidence, the Commissioner's decision will be reversed and defendant will be ordered to pay plaintiff benefits for the period claimed.

## II. *STANDARD OF REVIEW*

The factual findings of the Commissioner in determining disability shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (1994). Substantial evidence is "more than a mere

scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's decision must be upheld if, upon reviewing the record as a whole, a reasonable mind would find adequate support for the Commissioner's conclusion. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir. 1981), citing *Consolidated Edison Co., v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Resolution of conflicts in evidence, including medical evidence, and the determination of disability is the Commissioner's task. *Richardson v. Perales*, 402 U.S. at 399, 91 S.Ct. 1420. If the Commissioner's decision is not supported by substantial evidence, this court has the power to affirm, modify, or reverse it. 42 U.S.C. § 405(g).

## III. *PROCEDURAL AND FACTUAL BACKGROUND*

Ismael Rosario is a 51 year-old man[1] who suffers from a variety of ailments, including cirrhosis of the liver, hepatitis, shoulder pain, and knee problems resulting from a torn meniscus. Prior to his alleged disability, Mr. Rosario worked as a security guard, van driver, grocer, and picture framer. He has not worked, however, since February 1, 1995. He has had a limited education and claims he is able to read a "little bit," but is unable to write in English. *See* Record, Docket No. 5, at 36.

Mr. Rosario filed for SSI benefits on November 30, 1995, alleging he had been disabled since the previous February. A hearing was held on January 2, 1997. On May 1, 1997, the ALJ found that Mr. Rosario was not disabled. Plaintiff sought review by the Appeals Council. On February 23, 1999, the Appeals Council denied review. On May 12, 1999, plaintiff filed this action seeking to reverse or remand the Commissioner's decision.

Mr. Rosario's relevant medical history starts in May 1995, when he first sought treatment from Dr. Lois Albury for musculoskelatal problems. At the time, he complained of left shoulder pain—a result of a 1984 gun shot wound—and telangiectasia.[2] In June 1995, Mr. Rosario sought medical treatment from Dr. Albury for swelling in his left knee. Although Dr. Albury treated Mr. Rosario with a knee brace, Daypro, and Cataflam, the treatment proved unsuccessful, and she referred him to an orthopedic surgeon, Dr. Victor Panitch.

Dr. Panitch saw Mr. Rosario in July 1995 and diagnosed him with a torn left medial meniscus requiring arthroscopic surgery. That surgery, performed in September 1995, did not eliminate Mr. Rosario's symptoms. In fact, his pain increased to the point that he was no longer able to walk for more than one block without significant difficulty. Throughout 1995, Mr. Rosario underwent physical therapy for his knee pain and received other post-operative care. The record indicates, however, that his physical therapy did not ease his knee pain. *See* Record, Docket No. 5, at 119 (noting continued pain through 12/8/1995).

After having been hospitalized in September 1996 for alcoholic hepatitis, Mr. Rosario again sought treatment from Dr. Albury, this time for abdominal pain. On November 6, 1996, Dr. Albury ran a series of laboratory tests and discovered that Mr. Rosario had tested positive for Hepatitis B and C, and exhibited lab values that indicated serious liver disease.[3] Dr. Albury

---

**1.** At the time of Mr. Rosario's application for SSI, he was 49 years old.

**2.** Telangiectasia is defined as "dilation of the previously existing small or terminal vessels of a part." STEDMAN'S MEDICAL DICTIONARY, 26th ed. at 1766.

**3.** Mr. Rosario's lab results noted his total bilirubin to be 4.4 mg. per deciliter, and his albumin level to be 2.6 gm per deciliter. Both of these values are well outside the scope of normal levels and indicate liver disease.

also noted, upon physical examination, that Mr. Rosario suffered from ascites.[4] In addition, Mr. Rosario's ultrasound test indicated Mr. Rosario suffered from cirrhosis of the liver, associated with a small amount of ascites. Dr. Albury prescribed Esgic Plus for Mr. Rosario's abdominal pain, and Lopressor, a beta-blocker, for his liver disease. In January, 1997, Mr. Rosario underwent further blood tests that determined he suffered from all three strains of Hepatitis, and showed his liver function to be still well outside the normal range. Mr. Rosario continues to be treated for his liver disease and its associated symptoms. According to the record, no further lab tests have been performed.

During the course of his SSI application, Mr. Rosario was also seen by Dr. Bloomberg, a Disability Determination Service ("DDS") psychiatrist, who found Mr. Rosario to be confused, and in some degree of pain, but otherwise not suffering from any mental impairment.

Also, Mr. Rosario's records were reviewed by two DDS physicians, Dr. A. Tonelli, on February 15, 1996, and Dr. Oscar Cartaya on March 19, 1996. Both physicians noted, upon review of only a partial record, that Mr. Rosario was able to perform "sedentary" work, that he could lift ten pounds regularly, twenty pounds occasionally, stand for at least two hours of the day, and sit at least six hours of the day. *See* Record, Docket No. 5, at 49, 53, 65, 70.

At the hearing, a vocational expert was given Dr. Cartaya's assessment of Mr. Rosario and asked what work, if any, could Mr. Rosario perform. The vocational expert concluded that Mr. Rosario could not perform his past work but retained the residual functional capacity for the full range of *light* work.

Taking the vocational expert's testimony and Dr. Cartaya's findings into account,

the ALJ found Mr. Rosario capable of light work and not disabled.

## IV. *DISCUSSION*

Under the Social Security Act, 42 U.S.C. § 423, a "disability" is the "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has or can be expected to last for a continuous period of not less than 12 months;" 42 U.S.C. § 423(d)(A) (1999). The regulations provide a five-step analysis to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1999).

Under *Goodermote v. Secretary of Health and Human Services,* the Commissioner must ask five questions in the following order:

1) Is the claimant currently employed. If yes, then the claimant is not eligible for benefits.

2) Does the claimant have a severe impairment or combination of impairments?

3) Does the claimant have an impairment equivalent to the list of impairments in Appendix 1? If so, the claimant is found disabled.

4) Is the claimant able to perform work done in the past?

5) If the claimant can not perform work done in the past, other factors including age, education, past work experience and residual functioning capacity need to be considered.

*Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6–7 (1st Cir. 1982). All parties agree claimant is not employed and therefore passes step one of the disability determination above. Disagreement arises during steps three and five.

---

4. Ascites is defined as "[a]ccumulation of serous fluid in the peritoneal cavity." STEDMAN'S MEDICAL DICTIONARY, 26th ed. at 154.

## A. *Listed Impairment*

At step three of the *Goodermote* analysis, the ALJ determined that Mr. Rosario's liver problems did not meet the requirements laid out in 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 5.05(C) and (D). Although the decision is perhaps technically supportable, it ignores the obvious suggestion of the record, that Mr. Rosario is disabled by his liver disease.

▇▇ The record indicates that, had Mr. Rosario undergone the proper tests, the results would show him to fall clearly within the listing requirements. The relevant language in the listing covers:

5.05 *Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease).* With:

C. Serum bilirubin of 2.5 mg. per deciliter (100 ml.) or greater persisting on repeated examination for at least 5 months; or

D. Ascites, not attributable to other causes, recurrent or persisting for at least 5 months, demonstrated by abdominal paracentesis, or associated with persistent hypoalbuminemia of 3.0 gm. per deciliter (100 ml.) or less

20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 5.05(C), (D).

In this case, Mr. Rosario's lab tests, performed in November 1996 and three months later in January 1997, both showed him to have a serum bilirubin of 2.5 mg. per deciliter or greater and ascites associated with hypoalbuminemia of 3.0 gm. per deciliter or less. *See* Record, Docket No. 5 at 146, 170. Unfortunately, no subsequent lab tests were performed; therefore it is impossible to tell from the record whether the plaintiff exhibited these abnormal lab values for the required five-month period. It is important to note, however, that Mr. Rosario continued and still continues to be treated for serious liver disease. It seems likely, that given Mr. Rosario's continuing problems, a third lab test would have also yielded abnormal results and clearly substantiated the existence of a listed impairment.

The listing offers less stringent requirements for those patients who have been diagnosed with cirrhosis of the liver by way of liver biopsy. These patients need only show the above mentioned lab values for a period of three months, instead of five months. Mr. Rosario was indeed diagnosed with cirrhosis of the liver; however, an ultrasound was used, and not a biopsy. Again, only a technical deviation in the method of diagnosis prevents Mr. Rosario from meeting the listing requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 5.05(F)(1) and (2).

## B. *Residual Functional Capacity*

At step five of the *Goodermote* analysis, the ALJ determined that Mr. Rosario retained a residual functional capacity that allowed him to perform "light work." This determination directly influenced the ALJ's later decision that Mr. Rosario was not disabled. Because the ALJ relied too heavily on the inconsistent evidence of nontreating, nonexamining physicians, and because the reviewing physicians did not consider a full record, the determination lacks substantial support.

The ALJ considered the opinions of three physicians: Mr. Rosario's treating physician since 1995, Dr. Albury; nontreating DDS reviewer, Dr. Tonelli; and nontreating DDS reviewer, Dr. Cartaya.[5] Dr. Albury stated that Mr. Rosario was disabled as a result of his liver problems and knee pain, and was incapable of any work. Drs. Tonelli and Cartaya felt Mr. Rosario could perform *sedentary* work, with some limitations on what weight he might carry. Despite the doctors' limita-

---

**5.** Although two nontreating reviewing physicians reviewed Mr. Rosario's record, the ALJ cites only the second reviewer, Dr. Cartaya.

tion of the plaintiff to sedentary work, the ALJ then took the Vocational Expert's suggestion that Mr. Rosario perform "light work." Had the ALJ properly analyzed Mr. Rosario's abilities according to the regulations, however, he should have determined that Mr. Rosario was capable of only sedentary work. Instead he relied on reports from nontreating reviewing doctors, whose opinions were inconsistent with treating physician's opinions.

How much weight, then, should the ALJ have given Dr. Albury's opinion versus the nontreating doctors' opinions? There has been some disagreement among the circuits over what is called the "controlling opinion" rule. *See Guyton v. Apfel*, 20 F.Supp.2d 156, 157 (D.Mass.1998). The controversy concerns how much weight, according to the regulations, should be given a treating physician's opinion. *See id.* (discussing whether treating doctor's opinion should be given controlling weight when other opinions are inconsistent). The language of the regulations states, "[g]enerally, we give more weight to opinions from your treating sources.... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. Pt. 404.1527(d)(2).

The First Circuit has held, in accordance with the regulations, that "when a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' does not apply." *Shaw v. Secretary of Health and Human Services*, 25 F.3d 1037, 1994 WL 251000, *3 (1st Cir.1994) (where the other "substantial evidence" consisted of the opinions of nontreating doctors). *Shaw*

goes on to say, however, that all things being equal, "a treating doctor's report may be entitled to 'greater' weight than an inconsistent non-treating source." *Id.*[6]

■ Here, the nontreating reviewing physicians' opinions were internally inconsistent. The area of dispute concerns whether Mr. Rosario should be assessed as capable of sedentary work or light work. Drs. Cartaya and Tonelli both explicitly report that Mr. Rosario could perform only sedentary work. *See* Record, Docket No. 5, at 49, 65. Both found, in addition, that Mr. Rosario had certain limitations that he should observe, namely the amount of weight he could lift, and the amount of time he could stand and sit. These observations are confusing, since the limitations to which they refer are the hallmarks of "light work" as defined by the regulations. Obviously, the explicit use of "sedentary" conflicts with the specific limitations suggested, which are generally used to aid those claimants capable of light work.

Mr. Rosario's treating physician, however, has suggested Mr. Rosario is capable of sedentary work at the very most. *See* Record, Docket No. 5, at 172. Dr. Albury's long treating relationship with Mr. Rosario, her extensive knowledge of his impairments, and her status as the only physician to have actually *seen* Mr. Rosario should have persuaded the ALJ to give controlling weight to her opinion, in preference to the inconsistent views of the nontreating physicians. In sum, the ALJ's decision to give more weight to the nontreating opinion, then, did not rest on substantial evidence; no "reasonable mind" would have relied on it. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). Mr. Rosario should have been assessed as capable of no more than sedentary work.

---

**6.** *Shaw* guides courts further by explaining, "[t]he Secretary's comments accompanying promulgation of the final regulation observe that if a treating and non-treating source conflict, and the two opinions are equally well-supported, the Secretary will give 'greater weight' to the treating source opinion, at least where the treating doctor is shown to have superior familiarity with the patient and a variety of other qualifications are met." *Shaw* at *5 n. 7, *citing* 20 Fed.Reg. 36,951.

There is another reason why the nontreating physicians' opinions should be afforded minimal, if any, weight. The ALJ relied on the nontreating physicians' review of only a partial record. A report given by a nontreating physician is entitled to evidentiary weight but cannot be the sole factor of an ALJ's decision. *See Browne v. Richardson*, 468 F.2d 1003, 1006 (1 Cir.1972); *Berrios Lopez v. Secretary of Health and Human Services*, 951 F.2d 427, 431 (1st Cir.1991); *DiVirgilio v. Apfel*, 21 F.Supp.2d 76, 80–81 (D.Mass. 1998). The weight given such a report should vary depending on the circumstances. *See Berrios Lopez*, at 431. Among the factors to consider is "the availability of most of the medical evidence to the non-examining physician." *See DiVirgilio*, at 81. In this case, none of the evidence of Mr. Rosario's liver disease was included in the records DDS reviewers used in making their determinations. Here, these nonexamining physicians only reviewed a partial record, never seeing vital information contained in the unreviewed portion. Thus, their report cannot be the sole factor in determining disability.

Once a claimant has been categorized as capable of sedentary or light work, the ALJ uses the regulations to evaluate that claimant's age, education, and work experience. A finding that a claimant is capable of sedentary work points the ALJ to 20 C.F.R. Pt. 404 Subpt. P, App. 2, Table 1. A finding that a claimant is capable of light work, points the ALJ toward 20 C.F.R. Pt. 404 Subpt. P, App. 2, Table 2. The ALJ, having mistakenly found Mr. Rosario capable of light work, improperly consulted Table 2. Because the court has determined that Mr. Rosario should be evaluated as capable of only sedentary work, Table 1 must be consulted to determine whether Mr. Rosario is disabled. The proper application of Table 1's guidelines requires a finding that Mr. Rosario is disabled.

Under Table 1, Mr. Rosario would be evaluated as a younger individual, age 45–49, who is illiterate (see infra, at page 3), and whose previous work experience was unskilled. A claimant with these credentials, Table 1 tells us, should be deemed disabled. *See* 20 C.F.R. Pt. 404 Subpt. P, App. 2, Table 1.

In sum, the ALJ's decision that Mr. Rosario was able to perform light work and was therefore not disabled, relied too heavily on conflicting and incomplete nontreating physicians' reports. The decision, therefore, did not rest on substantial evidence and should be reversed. Even if reversal were not required, the court would be forced to recognize the overwhelming evidence that this claimant suffers from a listed impairment and remand this case for further evaluation of Mr. Rosario's current lab values.[7]

## V. CONCLUSION

For the above reasons, plaintiff's motion to reverse or remand the decision of the Commissioner (Docket No. 7) is therefore Allowed, and defendant's motion to affirm the Commissioner (Docket No. 9) is Denied. Defendant will be ordered to pay plaintiff Social Security benefits for the period commencing on November 30, 1995 to the present.

---

7. The ALJ reviewed much of the record on his own, without the benefit of a reviewer's report. It is this last portion of the record that contains Dr. Albury's findings concerning Mr. Rosario's liver problems. The ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician." *Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir.1987). *See also Nieves v. Secretary of Health and Human Services*, 775 F.2d 12, 14 (1st Cir. 1985) No contradictory evidence by a physician exists in the record concerning Mr. Rosario's disabling liver disease.