**Virginia F. CASTRO Plaintiff,**

**v.**

**Jo Anne BARNHART[1], Commissioner, Social Security Administration, Defendant**

**No. CIV.A. 01–40095–CBS.**

United States District Court, D. Massachusetts.

May 8, 2002.

---

1. Jo Anne B. Barnhart replaced Larry G. Massanari as the Commissioner of Social Security on November 9, 2001. Pursuant to Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), Ms. Barnhart is automatically substituted as the Defendant in this case without the necessity of any further action.

James N. Wittorff, Law Office of James N. Wittorff, Milford, MA, for Plaintiff.

Mary Elizabeth Carmody, U.S. Attorney's Office, Boston, MA, for Defendant.

### MEMORANDUM OF DECISION AND ORDER FOR JUDGMENT

SWARTWOOD, United States Magistrate Judge.

#### Nature of the Proceeding

By Order of Reference dated July 17, 2001 and with the voluntary written consent of the parties, this case was referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. This Order addresses Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) and Defendant's Motion to Affirm the Decision of the Commissioner (Docket No. 12).

#### Nature of the Case

Virginia Castro ("Ms. Castro" or "Plaintiff") filed this action against the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") seeking a review of the decision to deny

her claim for Social Security Disability Insurance benefits.

## Prior Proceedings

In August 1999, Virginia Castro filed a claim for Social Security Disability benefits alleging that she had been unable to work since February 24, 1998 due to neck, back and right shoulder pain. The claim was initially denied on January 17, 2000. On March 17, 2000, Ms. Castro filed a request for reconsideration, in which she alleged depression as an additional ground for disability. Ms. Castro's request for reconsideration was denied on April 26, 2000. Ms. Castro then filed for a hearing before an Administrative Law Judge. The Administrative Law Judge ("ALJ"), Lynette Diehl Lang, determined, after hearing, that Ms. Castro was not disabled within the meaning of the Social Security Act ("SSA"), on the grounds that although Ms. Castro had a severe impairment or impairments that precluded her ability to return to her former work as a machine operator/factory worker, she retained the residual functional capacity to perform light work. Thereafter, Ms. Castro filed a Request for Review of the ALJ's decision by the Social Security Administration Office of Hearings and Appeals ("Appeals Council"). The Appeals Council denied Ms. Castro's request for further review. The ALJ's decision therefore became the final agency decision and subject to judicial review. *See* 42 U.S.C. 405(g).

## Facts

1. Ms. Castro was born in Portugal on April 27, 1954. She came to the United States in 1977. Ms. Castro has a fourth grade education, is unable to read or write in English, and has limited command of the English language. Ms. Castro has held a number of jobs in various factories where she worked as an unskilled laborer, primarily as a machine operator/factory worker. *Record of Social Security Proceedings* (Docket No. 7) ("*Rec.*"), at 27–29.

2. Ms. Castro's disability claim relates to an at-work injury she suffered on February 24, 1998 while attempting to lift something. *Id.* at 30, 35–36.

3. From the date of her injury through the proceedings concerning her claim, Ms. Castro visited numerous physicians, including: Dr. Pugleasa, Ms. Castro's primary physician; Dr. Bell, a neurologist; Dr. Goss, an orthopedist who conducted an independent medical evaluation; and Dr. Conley, a rheumatologist. During this period, Ms. Castro consistently complained of back, shoulder, neck and arm pain. For most of this period, Ms. Castro's physical exams were unremarkable and her doctors did not see any reason for her not to return to work (although on one occasion, Dr. Bell recommended that she lift no more than ten pounds). Ms. Castro was prescribed various medications for her pain, including ultram, vicodin, elavil, tylenol, naprosyn and amitriptyline. *See generally Id.*, at 110–192.

4. On March 10, 1999, Dr. Conley noted that Ms. Castro's "discomfort on presentation today appears to be out of proportion to any pathology noted upon examination", and opined that her underlying depression may be contributing to her pain syndrome. For this reason, Dr. Conley prescribed Zoloft for Ms. Castro. *Id.* at 135–136.

5. On April 7, 1999, Dr. Bell noted that Ms. Castro was suffering from Myofascial pain syndrome and depression secondary to the Myofascial pain syndrome.[2] *Id.* at 117.

---

2. " 'Myofascial pain syndrome' is defined as

'irritation of the muscles and fasciae (mem-

6. After applying for Social Security benefits, in addition to continuing her treatment with Dr. Bell, Ms. Castro was also examined by Dr. Rosenblum, a psychologist and Dr. Simonian, a psychiatrist. Since that time, Ms. Castro continues to complain about back, neck, shoulder and arm pain. Additionally, Ms. Castro has been diagnosed as suffering from depression, symptoms of which include inability to sleep, anxiety, poor concentration and poor appetite. Ms. Castro has been prescribed various drugs for her depression. *Id.* at 116, 136, 159, 191–192. Some of Ms. Castro's symptoms have improved somewhat with medication and supportive therapy.

7. As part of the initial disability determination, Dr. Chase reviewed the medical evidence and assessed plaintiff's physical residual functional capacity. He opined that she could occasionally lift 20 pounds, frequently lift ten pounds, and stand and/or walk for six hours in an eight hour day. In addition, he limited arm pushing and pulling, as well as overhead work. *Id.* at 137–144.

8. Ms. Castro's file was also reviewed by Orrin Blaisdell, PhD., who completed a mental capacity evaluation of Ms. Castro on December 21, 1999. Dr. Blaisdell found Ms. Castro to be moderately limited in her ability to maintain attention and concentration for sustained periods; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and her ability to perform at a consistent pace without an unreasonable number and length of rest periods. Specifically, Dr. Blaisdell found that Ms. Castro "would appear to have definite problems with sustained concentration, and might also find it hard to keep up a pace for a full work day. She is certainly a credible informant, given history, culture." *Id.* at 145–148.

9. After Ms. Castro filed her Request for Reconsideration, her file was reviewed by Drs. Baez–Garcia and Ursprung. Dr. Baez–Garcia determined that Ms. Castro did not have a severe physical impairment. *Id.* at 180. Dr. Ursprung noted that the Plaintiff's pain and depression are sufficient to interfere with comprehension and recall of complex material, but she can probably understand and remember simple instructions. Dr. Ursprung also found that Ms. Castro has difficulty with sustained attention, concentration, pace and follow-through. Dr. Ursprung concluded that Ms. Castro had "no 'marked' restrictions ... from a psychological perspective. However [she] is in distress and has depression. Her numerous 'moderate' psychological restrictions should be understood in the context of whatever medically based restrictions she may have." *Id.* at 167–170.

10. In August 2000, Dr. Simonian completed a mental functional assessment of Ms. Castro in which he found her to suffer from both affective and anxiety disorders, and noted: the presence of appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; and decreased energy and difficulty concentrating or thinking. Dr. Simonian also found that Ms. Castro had the following functional limitations: marked difficulties in maintaining social functioning; constant deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; moderate restriction of activities of daily living; and continual episodes of de-

branes) of the back of the neck causing chronic pain (without evidence of nerve or muscle disease).' " *Marden v. Barnhart,* 2002 WL 453252 (D.Me.), citing *Mondragon v. Apfel,* 3 Fed.Appx. 912, 915 n. 1 (10th Cir.2001).

terioration or decompensation in work or work-like settings. *Id.* at 186–189.

11. Also in August of 2000, Dr. Bell completed a residual functional capacity profile of Ms. Castro. Dr. Bell found that Ms. Castro could be expected to sit, stand and walk for only up to one hour a day, and lift up to five pounds frequently and up to six to ten pounds occasionally. He said she should refrain from pushing or pulling with her hands, squatting, crawling or climbing, although she could occasionally reach and bend, and that plaintiff was able to use her hands for repetitive simple grasping and fine manipulation. Dr. Bell also noted that Plaintiff, as part of an eight hour day, could not sit more than a total of four hours, stand more than one hour, or walk more than a total of two hours. Dr. Bell concluded that the plaintiff was utterly restricted against unprotected heights; moderately restricted against moving machinery, driving automobile equipment, and exposure to dust, fumes and gases; and mildly restricted against temperature changes and humidity. *Id.* at 190.

### Discussion

Ms. Castro seeks review of the Commissioner's decision denying her disability benefits under the SSA. Under the SSA, a "disability" is defined as:

> . . . an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 416(i)(1) and 423(d)(1).

The SSA further provides, in pertinent part, that:

> . . . an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work that exists in significant numbers either in the region where such individual lives or in several regions of the country.

> \* \* \* \* \* \*

> . . . a 'physical or mental impairment' is an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> \* \* \* \* \* \*

> An individual shall not be considered under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner . . . may require.

42 U.S.C. §§ 423(d)(2)(A), 423(d)(3), and 423(d)(5).

The Plaintiff asserts: first, that the ALJ's finding that she was not credible is not based on substantial evidence; and second, that the ALJ improperly gave greater weight to the opinion of a non-examining physician over that of her treating physician.[3] The Defendant, on the

**3.** Plaintiff alleges that the ALJ erred by finding that Ms. Castro has "severe myofascial pain syndrome and depression related" thereto, while at the same time finding that Ms. Castro did not meet any of the listed impairments. In support of this assertion, Ms. Cas-

other hand, argues: 1) that the ALJ properly determined that Ms. Castro's subjective complaints of pain were not credible, that is, that there is substantial evidence in the record to support a finding that Ms. Castro's complaints were not in proportion with the medical evidence; and 2) that the ALJ properly weighed the medical evidence.

*Whether The Secretary's Credibility Determination Is Supported By Substantial Evidence*

Judicial review in Social Security disability cases is limited to determining whether the record, on the whole, contains substantial evidence to support the Commissioner's determination. 42 U.S.C. § 405(g); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). Thus, this Court must affirm the Commissioner's final decision "even if the record could justify a different conclusion, so long as the decision is supported by substantial evidence." *Evangelista v. Secretary of Health and Human Services*, 826 F.2d 136, 144 (1st Cir.1987), quoting *Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3 (1st Cir.1987).

 It is the responsibility of the administrative law judge to draw inferences from the record and make credibility determinations. *Irlanda Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir.1991). A reviewing court must treat an agency's factual conclusion with even more deference than an appellate court would show a factual conclusion reached by the district court, for the agency has had not only the opportunity to view the witnesses and determine their credibility, but it also has special expertise, experience and knowledge of the subject matter that guide its determination of the facts. *Becker v. Secretary of Health and Human Services*, 895 F.2d 34, 36 (1st Cir. 1990). When considering a claimant's subjective assertions of pain, the administrative law judge must consider:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g. movement, activity, environmental conditions); (3) Type, dosage effectiveness, and adverse side effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) the claimant's daily activities.

*Avery v. Secretary of Health and Human Services*, 797 F.2d 19, 29 (1st Cir.1986).

Ms. Castro claims that the ALJ erred in discounting her subjective complaints of pain in that the ALJ did not apply the proper legal standard and failed to consider required factors under *Avery*. Specifically, Ms. Castro asserts that the ALJ's finding that she is not credible is not supported by substantial evidence because: (1) the ALJ failed to develop the record or make any findings concerning the extent to which her medications had an effect on her condition (the Third *Avery* factor); and (2) the ALJ erred in her analysis and determination that Ms. Castro's daily activities undermined her disability claim (the Sixth *Avery* factor).

 As to Ms. Castro's assertion that the ALJ did not properly inquire into or consider the types of medication taken by her, the effects of such medication on her condition or the side effects, if any, of such medication, Ms. Castro acknowledges that

---

tro argues that she did, in fact, meet a "Listing". However, the Plaintiff does not provide any evidence to support this assertion, and does not identify which listing she claims to meet. Furthermore, on the record before me, the ALJ's finding in this regard is supported by substantial evidence.

she never raised these issues at the hearing. *See Plaintiff's Memorandum In Support of Her Motion for Judgment on the Pleadings* (Docket No. 10), at p. 15. While it is true that an administrative law judge has an obligation to adequately investigate a claimant's disability claim, the claimant has the initial burden of making a reasonable threshold showing of the alleged disability and any related functional limitations. *Santiago v. Secretary of Health and Human Services*, 944 F.2d 1 (1st Cir.1991). That is, the administrative law judge only has an obligation to develop the record of an impairment of which s/he has been alerted. Plaintiff claims that the ALJ erred in not investigating the effectiveness or the side effects, if any, of her medications vis a vis her condition. However, at no time did the Plaintiff or her attorney allege that either the effectiveness of her medications or any side effects of such medication were an issue in this case. Therefore, Ms. Castro can not now complain that the failure to consider such issues was error.

██ I will now consider Plaintiff's contention that the ALJ failed to properly examine her daily living activities in determining that she was not credible. In support of this claim, Plaintiff cites *Aguiar v. Apfel*, 99 F.Supp.2d 130 (D.Mass.2000), in which the court determined that the administrative law judge in that case failed to properly develop the record, because he failed to make adequate inquiry into the claimant's daily activities and "misconstrued" the facts as to which the claimant testified. In this case, Plaintiff testified that she attends church almost every day and regularly visits friends and people in need at their homes. Plaintiff was asked by the ALJ whether she cooks and responded that she does because she does not have much choice. Ms. Castro reported that she does light cleaning, with her

son helping her with the heavier tasks, and that she does the grocery shopping with her husband's assistance. Plaintiff also testified that she does some walking, explaining, "I don't have much problem with that." *Rec.*, at p. 40.

The ALJ also considered the medical evidence concerning Ms. Castro's claims of disabling pain. While Dr. Pugleasa's initial examination of Ms. Castro (immediately following her injury) noted some tenderness, by plaintiff's next visit he observed an "unremarkable" physical exam. Despite continued complaints of tenderness, subsequent examinations with Drs. Bell, Goss and Conley also found normal gait, coordination, range of motion and muscle strength and failed to provide etiology for her complaints. Dr. Goss stated that he could find no hard, objective evidence of a neurological and musculoskeletal pathology, so was unable to make a case for ongoing disability. Dr. Conley found that the plaintiff's discomfort appeared disproportionate to any pathology noted. The only abnormal findings for this period were small disc protrusions which were noted not to cause any spinal stenosis, and deemed not to be the cause of her symptoms. On March 4, 1999, Dr. Bell stated that cervical and thoracic MRI scans had been normal, and as recently as June 14, 2000, Dr. Bell noted that an electromyogram revealed no abnormalities. The consensus of these physicians that plaintiff's subjective complaints did not correlate with objective medical evidence fully supports the ALJ's finding that the plaintiff's allegations are inconsistent with the medical record.

██ While complaints of pain need not be precisely corroborated with medical evidence, they must be consistent with medical findings. *Avery*, 797 F.2d at 21; *Dupuis v. Secretary of Health and Human Services*, 869 F.2d 622, 623 (1st Cir.1989).

Based on Ms. Castro's testimony and the record evidence, the ALJ found that Ms. Castro was able to independently care for herself, cook and clean, attend mass daily and visit needy individuals. While there is evidence in the record that Ms. Castro is restricted in the amount which she can lift and bend when engaging in such activities, the ALJ's finding is consistent with Ms. Castro's testimony, the medical evidence and the documentary evidence. Therefore, I find that there is substantial evidence in the record to support the ALJ's finding that in light of her ability to engage in a myriad of daily living activities, Ms. Castro's subjective assertions of pain are inconsistent with her claim that she is disabled.

*Whether The ALJ Improperly Gave Greater Weight To The Opinion Of A Non-examining Physician Over That Of A Treating Physician*

When making a determination as to whether a claimant has established that s/he is disabled, the administrative law judge must apply the following five step sequential evaluation process:

1. Is the individual engaging in substantial gainful activity?

2. Does the individual have an impairment (or combination of impairments) that is severe?

3. Does the impairment (or combination of impairments) meet or equal a listed impairment?

4. Is the individual precluded from performing past relevant work?

5. Is the individual precluded from work which exists in significant numbers in the national economy.

20 C.F.R. § 404.1529.

With respect to the first four stages in the sequential evaluation process, the ALJ found that although Ms. Castro had established that she was suffering from severe myofascial pain syndrome and related depression, these impairments did not either meet or equal a listing. The ALJ further concluded that Ms. Castro did not have the ability to return to her past work. At the fifth stage of the sequential evaluation process, the ALJ considered Ms. Castro's residual functional capacity and concluded that she still had the ability to perform light work. Therefore, the ALJ determined that Ms. Castro is not disabled within the meaning of the SSA. In making this determination, the ALJ gave controlling weight to the opinion of Dr. Chase, who prepared a physical residual functional capacity assessment of Ms. Castro based on a review of her medical records and determined that she could perform light work, over that of Dr. Bell, one of Ms. Castro's treating physicians, who prepared such an assessment and concluded that Ms. Castro could not perform even sedentary work.

Ms. Castro asserts that the ALJ impermissibly rejected the opinion of her treating physician, Dr. Bell, in favor of the opinion of a non-treating, non-examining physician. Ms. Castro concedes that, under the applicable regulations, the administrative law judge may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors. *see Rosario v. Apfel,* 85 F.Supp.2d 62, 67 (D.Mass.2000), citing *Shaw v. Secretary of Health and Human Services,* 25 F.3d 1037 (1st Cir.1994); *see also* 20 C.F.R. § 404.1527(d)(4). However, Ms. Castro contends that the ALJ's decision to reject Dr. Bell's opinion was the result of the ALJ's misconstruing Dr. Bell's treatment notes. Ms. Castro argues that if Dr. Bell's opinion had been given controlling weight, the Grid would have required a finding that she is disabled.

In August 2000, Dr. Bell's prepared a physical residual functional capacity assessment of Ms. Castro in which he recommended that her lifting be restricted to ten pounds and that she walk, sit and stand for no more than an hour, thus limiting her to sedentary work. *See* R. 190 (*Ex.16F*). In October 1999, Dr. Chase prepared such an assessment which would permit Ms. Castro to perform light work. Ms. Castro argues that the ALJ should have given Dr. Bell's assessment controlling weight because it is "consistent" with both his own treatment notes and the record as a whole. Plaintiff further argues that given that Dr. Bell's September 24, 1998 treatment note indicates that Ms. Castro should be able to return to work if she adheres to a ten pound lifting restriction with no overhead lifting, the ALJ misconstrued Dr. Bell's notes when she found that his treatment records never included restrictions which would preclude Ms. Castro from performing light work, which would include only a twenty pound lifting restriction. *See* R. 4.

An opinion that does not vary is not the same as an opinion consistent with the medical evidence. Furthermore, in this case, it can be argued that Dr. Bell's opinion has not been consistent throughout the course of Ms. Castro's treatment. Dr. Bell's treatment notes indicate that he was unable to find the source of Plaintiff's discomfort. Prior to the 2000 residual functional capacity assessment, the only time that Dr. Bell's records indicate that he placed any restrictions on Ms. Castro was the September 24, 1998 treatment note which appeared to be a response to Ms. Castro's report that she attempted to return to work, but was in too much pain. Otherwise, Dr. Bell consistently indicated that there was no objective evidence to support Ms. Castro's symptomology. Consequently, it appears that in preparing a physical functional capacity assessment of Ms. Castro in August 2000, Dr. Bell relied on her persistent subjective complaints of pain. As I have previously found, the ALJ properly discounted Ms. Castro's subjective complaints concerning her pain. Therefore, it is not surprising that the ALJ was disinclined to rely on an assessment that was necessarily based on those complaints. Furthermore, a review of the entire record reveals that Dr. Bell's assessment is not entirely consistent with even Plaintiff's own self-reports. For instance, Ms. Castro testified that she is able to walk without difficulty, and reported directly to Dr. Bell that she was able to ambulate, yet he restricted her walking to just one hour in an eight hour day. Furthermore, Dr. Bell is the only one of Ms. Castro's treating physicians to have placed any specific limitations on her. Not only did Drs. Conley and Goss not impose any limits on Plaintiff's activities, neither found any objective evidence of an impairment that could cause her reported symptoms and Dr. Goss explicitly stated that he was unable to make a case for ongoing disability. These two opinions are consistent with the entire medical record as a whole, as well as with Dr. Chase's determination that Ms. Castro is able to perform light work.

An advisory report by a non-examining physician is entitled to evidentiary weight, which "will vary with the circumstances, including the nature of the illness and the information provided the expert." *Berrios–Lopez v. Secretary of Health and Human Services,* 951 F.2d 427, 431 (1st Cir., 1991), citing *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 223 (1st Cir.1981). The limitations placed on the Plaintiff in Dr. Bell's residual functional capacity assessment are not consistent with his own treatment records

or the entire medical record as a whole. Therefore, it was entirely permissible for the ALJ to grant greater weight to Dr. Chase's assessment.[4]

In light of the complete lack of objective medical evidence to confirm Plaintiff's allegations of pain, and the ALJ's finding that the Plaintiff's complaints of pain were not entirely credible, there is substantial evidence of record to support the Commissioner's decision that plaintiff retains the ability to perform light work.[5] For this reason, I am denying Ms. Castro's motion for judgment on the pleadings and granting the Defendant's Motion to affirm the Commissioner's decision.

### Conclusion

It is ordered that:

1. Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is *denied;* and

2. Defendant's Motion to Affirm the Decision of the Commissioner (Docket No. 12) is *allowed.*

---

4. The Plaintiff further argues that the ALJ erred in relying on Dr. Chase's opinion, because while Dr. Chase's notes indicate he had given Dr. Bell's opinion controlling weight, his functional capacity assessment did not adhere to lifting restrictions placed on the Plaintiff in Dr. Bell's September 1998 office note. Dr. Chase determined that Ms. Castro could lift twenty pounds *occasionally* and ten pounds frequently. It is not clear to me that this conclusion is necessarily inconsistent with Dr. Bell's September 24, 1998 office note. Furthermore, this conclusion clearly is not inconsistent with Dr. Bell's treatment records taken as a whole.

5. Plaintiff does not raise the issue of whether the ALJ properly analyzed her emotional condition, specifically, the residual functional capacity assessments of Dr. Simonian and the two reviewing mental health experts, Dr. Blaisdell and Dr. Usprung, to determine if

Judgment shall enter for the Defendant, Jo Anne Barnhart, Commissioner, Social Security Administration.

claimant's non-exertional impairments, i.e., her depression, would have more than a marginal effect on her ability to perform light work. *See Seavey v. Barnhart,* 276 F.3d 1 (1st Cir.2001) (presence of significant, non-exertional impairment limited the Commissioner's ability to rely on Grid to direct a decision, and required testimony of a vocational expert); *see also Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520, 526 (1st Cir. 1989) (*discussing mental requirements of unskilled work*). On the record before me, it appears that the ALJ properly concluded that Ms. Castro's mental impairments did not have more than a marginal effect on her ability to perform light work. *This determination appears* to have been based, in part, on the fact that Ms. Castro's psychiatric care had begun just a few months prior to the hearing, and that she appeared to be responding to treatment.